Attachment B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOSE OFREY

Vs. C.A. No. 05-014ML

JOB LOT OF NORTH KINGSTOWN,
INC. and OCEAN STATE JOB LOT, INC.

**PLAINTIFF'S RESPONSE TO DEFENDANTS' FIRST SET OF INTERROGATORIES**

INTERROGATORY 1: State the names, addresses and title of each and every person whom Plaintiff believes has knowledge of any facts relating to this matter and provide a brief description of said knowledge.

RESPONSE 1: Witnesses to facts relating to this matter include various rank and file employees of the employer, management employees of the employer, and employees of the Talent Tree Agency, an employment agency providing temporary employees to Defendants. I am not sure of all of the names of these witnesses, but these witnesses can be discerned through the employers' personnel records. To the extent that I have knowledge of the specific identities of certain witnesses they are as follows:

1. Belen Valazquz: an employee of Talent Tree Agency, located at 222 Richmond Street, Suite 205, Providence, RI 02903; 401-421-0488. This witness was the individual from Talent Tree who essentially assigned workers to the Defendants. It is believed that she will be able to testify that the Defendants had a history of employing illegal (mostly Hispanic) immigrant workers; that I complained to her regarding the treatment of these illegal workers, and specifically the practice of certain of Defendants' managerial employees of charging these illegal workers a fee to maintain their jobs; that I complained that I was also being mistreated in the same respect, because of my Hispanic background, even though I was a native of Puerto Rico, and therefore a citizen of the United States; that she attended a meeting with me and another employee, during or about November 2003, at Talent Tree's headquarters, also attended by Janett Pearson,

Talent Tree Sales Executive, as well as Defendants' General Manager Dick Jordano; and Defendants' Security Manager Tom Nelson. It is believed that she will testify regarding the above referenced meeting that Mr. Jordano acknowledged and apologized for the mistreatment of Hispanic workers, including me, and stated that he would take appropriate action. During that same meeting, general issues of job discrimination, hostile environment, the abuse of Hispanic workers, and the "sale of jobs" to Hispanic workers was discussed in detail. It is also believed that Ms. Velazquez will testify that approximately two weeks prior to the above referenced meeting, I complained to her that I was told by the Defendants' manager Allan Portillo, that if I wanted to be made a permanent employee of Defendants, "...it would cost [me] $2,500...if you pay you stay, if you don't pay you'll be gone." This incident occurred approximately three weeks after I was first assigned by Talent Tree to the Defendants, during or about September of 2003. It is believed that this witness will testify that, despite my complaints, I should not leave my job because "changes were going to be made." I believe this witness will also testify that, during the above-referenced meeting, Jordano stated that he was aware of the problem of the mistreatment of Hispanic employees, and that he would address the problem, and that if I had any problems I should come and see him. However, as Mr. Velasquez will testify, no significant changes occurred. It is also believed that this witness will testify that during the above-referenced meeting, Nelson stated that nothing will happen to me or the co-worker with me because of our complaints, another stated that was not true. Nelson revealed a letter during this meeting indicating that he had been fired because another employee, Jose Parada, had taped his unlawful statements. Nelson said that the employer was going to "clean house," and both he and Jordano apologized. However, to my knowledge, no corrective action was taken to prevent the mistreatment of Hispanic workers, including me. In fact, within two weeks, they fired two Hispanic workers.

2. Janett Pearson: This witness is/was a sales executive for Talent Tree. It is believed that she will corroborate the substance of the meeting described above, and confirm that I and Carlos Castro complained regarding the mistreatment of Hispanic employees. In addition to confirming everthing outlined above, it is belived that she will

confirm that she apologized to me and employee Castro for the manner in which we were being treated, and that "we were brave" to come forward.

3. Carlos Castro: This witness is an employee of Defendants who complained with me to Talent Tree regarding the mistreatment of Hispanic workers, and who attended a meeting with me, Jordano, Nelson, and Talent Tree officials, as described above. He will testify regarding the extent of the mistreatment of employees of Hispanic descent by the Defendants. Mr. Castro's home address is unknown, but should be available through company records.

4. Luis Alicacea: This witness is an employee of the Defendants who will testify regarding the mistreatment of Hispanic workers by the Defendants. He will also testify, in addition to other incidents of discrimination, that Plaintiff was told by management employees that, after he became a permanent employee, Plaintiff was prohibited from sitting at a lunch table in the employers premises, with white employees, His home address is unknown, but should be available through company records.

5. Felix Miranda: See No. 4 above.

6. Pepe (Last Name Unknown): A Team Leader of Defendants. It is believed he will testify that Richie Hayes, the Defendants' Manager of Receiving stated to Bill Toth (Defendants' Team Leader) that, in reference to me, "who does that fucking Puerto-Rican think he is, going to meetings and complaining about the company?" This statement took place after the meeting at Talent Tree, referenced above. The above referenced comment was also believed to have been heard by an employee by the name of Mr. Rolando (First name unknown.) The home address of these individuals is unknown but should be available through company records.

7. Bill Toth (unsure of spelling re: last name)- See No. 6 above. It is anticipated that this witness's truthful testimony will also confirm that he told the Plaintiff that he (Toth) was told by receiving Manager Hayes, that Plaintiff would not

receive a deserved raise because "he's a fucking Puerto-Rican." It is believed this comment by Toth was overheard by another witness, name unknown, but referred to by the nickname "Kawasaki."

8. Jose Parada: This witness is an employee of the defendants who will testify regarding the mistreatment of Hispanic workers by the Defendants. In addition to other information, Mr. Parada will testify that he recorded one of Defendants' managers attempting the "sell" jobs to Hispanic workers. His home address is unknown, but should be available through company records.

9. Dick Jordano: Believed to be the General Manager of Defendants. It is anticipated that his truthful testimony will confirm the details of my complaints regarding mistreatment of Hispanic workers, and the general atmosphere of mistreatment of Hispanic workers in Defendants' workplace.

10. Tom Nelson: Believed to be Defendants' security manager. It is anticipated that his truthful testimony will confirm the details of my complaints regarding mistreatment of Hispanic workers, and the general atmosphere of mistreatment of Hispanic workers in Defendants' workplace.

11. Plaintiff: Currently resides at 4 Cathedral Square, Apt. 307 Providence, Rhode Island 02903. Plaintiff will testify in corroboration of the allegations contained above, both with respect to his complaints to the employer regarding unfair treatment of Hispanic workers, and the fact that Hispanic workers were consistently subjected to a hostile work environment. In addition he will testify that he was told by management personnel that as a Hispanic employee, he had to "pay" for his job. He will testify that he was told by management personnel that, when he moved from the splitting to receiving area, he was denied a raise, which he otherwise merited because he was a Puerto-Rican. He will also testify that, after becoming a permanent employee of defendants, he was told that he was not allowed to sit at a lunch table with white employees. In addition to his other testimony, confirming the allegations in his

Complaint and Charge of Discrimination, Plaintiff will testify that he was told by management personnel that he was being "laid off" because he was a Puerto Rican, and as an example to other Hispanic employees who dared to complain regarding unfair workplace conditions.

INTERROGATORY 2: Identify each and every person whom Plaintiff intends to call as a witness at the trial of this matter.

RESPONSE 2: Please see Witnesses Identified Above.

INTERROGATORY 3: Identify each and every person Plaintiff or his representatives contacted, interviewed or communicated with regarding his allegations in this matter, or during any investigation in connection with this matter. Identify any and all witnesses thereto and any documents relating to or reflecting the information requested in this Interrogatory.

RESPONSE 3: None to Date, Depositions to be Scheduled.

INTERROGATORY 4: Identify every person who has been retained to give expert or opinion testimony at trial.

RESPONSE 4: None to Date.

INTERROGATORY 5: Provide a detailed calculation or explanation of each item of damages claimed or sought by Plaintiff in this action, and identify every document or other evidentiary material on which it is based.

RESPONSE 5: Plaintiff is seeking damages to compensate him for his lost salary, interest, the costs of this action, attorney's fees, and to the extent proven, compensatory

and punitive damages. Plaintiff, at the time of his discharge, was earning approximately $9.80/hour. He was out of work for approximately 3 ½ months, during which time he did not receive unemployment of any other benefits or income. While he was employed, Plaintiff was not paid any benefits. Plaintiff has not sought medical treatment but has suffered various symptomology, resulting from the distress caused by his unlawful treatment. Since the employers' conduct was blatantly unlawful, and indicates a willful and wanton disregard of state and federal laws, as well as a clear intent to exact a reprisal against Plaintiff for asserting his legal rights, Plaintiff believes he can mount a viable claim for punitive damages.

INTERROGATORY 6: State the name, address and area of specialization of each and every physician, psychologist, psychiatric social worker or other health professional visited by Plaintiff with respect to his mental or physical condition at any time from January 1, 1998 to the present and state the exact date of each and every visit.

RESPONSE 6: None to date.

INTERROGATORY 7: State whether Plaintiff has contacted, or been contacted by any employer or potential employer with respect to possible employment since his lay-off from Defendants.

RESPONSE 7: Plaintiff attempted to secure replacement employment through the Talent Tree Agency. He ultimately secured employment at Bio-DeTek, located at 525 Narragansett Avenue in Pawtucket, RI. Plaintiff previously worked for a short time at Ira Green located at 177 Georgia Ave, Providence, RI 02903.

INTERROGATORY 8: State whether Plaintiff has applied for and/or received unemployment compensation since the cessation of employment with Defendants.

RESPONSE 8: No.

INTERROGATORY 9: Identify the "supervisor" referred to in Paragraph 17 of your Complaint.

RESPONSE 9: Richard Heiss (unsure re: spelling of last name.)

INTERROGATORY 10: Identify the policies referred to in Paragraph 18 of your Complaint.

RESPONSE 10: It is Plaintiff's understanding that, based on existing company policy, when an employee was promoted from splitting to receiving, that employee was entitled to a raise in the amount of $1.60/an hour.

INTERROGATORY 11: Identify the "Team Leader" identified in Paragraph 19 of your Complaint.

RESPONSE 11: Bill Toth (unsure of spelling re: last name; this employee was commonly known as "Billy T.")

INTERROGATORY 12: Identify any witnesses to the conversation referred to in Paragraph 19 of the Complaint.

RESPONSE 12: Bill Toth, Mr. Roland, Juan Fuentes, and Juan Benitez.

INTERROGATORY 13: Identify any notes or documents related to the allegations set forth in Paragraph 19 of the Complaint.

RESPONSE 13: None.

INTERROGATORY 14: Identify the "supervisor" referred to in Paragraph 21 of the Complaint.

RESPONSE 14: Richard Heiss.

INTERROGATORY 15: Identify any witnesses to the conversations referred to in Paragraph 21 of the Complaint.

RESPONSE 15: Alan Portillo, Richard Heiss, Bill Toth.

INTERROGATORY 16: Identify the individual whom Plaintiff claims told him that he would not be given a raise because he was Puerto Rican as alleged in Paragraph 21 of the Complaint.

RESPONSE 16: Bill Toth.

INTERROGATORY 17: Identify the "general manager" referred to in Paragraph 22 of the Complaint.

RESPONSE 17: Dick Jordano.

INTERROGATORY 18: Identify any witnesses to the conversations referred to in Paragraph 22 of the Complaint.

RESPONSE 18: Dick Jordano; and those witnesses otherwise identified in Response No. 1.

INTERROGATORY 19: Identify the "manager" referred to in Paragraph 24 of the Complaint.

RESPONSE 19: Richard Heiss.

INTERROGATORY 20: Identify any witnesses to the conversation referred to in Paragraph 24 of the Complaint.

RESPONSE 20: Richard Heiss; Juan Fuentes; Juan Benitez; Bill Toth.

INTERROGATORY 21: Identify the "other employees" referred to in Paragraph 24 of the Complaint.

RESPONSE 21: Juan Benitez; Juan Fuentes, Mr. Rolando.

INTERROGATORY 22: Identify the "appropriate authorities" referred to in Paragraph 27 of the Complaint.

RESPONSE 22: Talent Tree Agency; Richard Jordano; Tom Nelson; Bill Toth; Alan Portillo and Raymond Conforte, Human Resources.

INTERROGATORY 23: Identify any witnesses to the complaints referred to in Paragraph 27 of the Complaint.

RESPONSE 23: See Response No. 22 and No.1.

Respectfully Submitted,
Jose Ofrey
By His Attorney,

Stephen T. Fanning #3900
305 South Main Street
Providence, RI 02903
401-272-8250
401-272-4520

Verification

I hereby certify and attest that the information contained herein are true to the best of my recollection, and agree that I will supplement any answers when and if any additional information becomes available to me.

Jose Ofrey (Signature)

Notary: Brie Fanning
Signed before me on this 10th day of November, 2005.
My Commission Expires 8/13/07

BRIE FANNING
Notary Public of Rhode Island
My Commission Expires 8/13/2007

Respectfully Submitted,
Jose Ofrey
By his Attorney,

Stephen T. Fanning

Stephen T. Fanning #3900
305 South Main Street
Providence, RI 02903
401-272-8250
FAX: 401-272-4520

CERTIFICATION

I hereby certify that I hand delivered a copy of the within to counsel for the Defendants, Joseph Whelan, 1500 Fleet Center, Providence, RI 02903, on the date indicated below.

Date: 11/10/05

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOSE OFREY

Vs. C.A. No. 05-014ML

JOB LOT OF NORTH KINGSTOWN,
INC. and OCEAN STATE JOB LOT, INC.

**PLAINTIFF'S RESPONSE TO DEFENDANTS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

REQUEST 1: Any and all reports provided to Plaintiff, or anyone acting on his behalf, by any experts contacted or retained for purpose of this litigation.

RESPONSE 1: None.

REQUEST 2: Any and all documents submitted to any government entity, agency or court by Plaintiff in connection with his employment with Defendants, the termination of his employment with Defendants, or the claims raised in this matter.

RESPONSE 2: Please see Attached.

REQUEST 3: Any and all documents received by Plaintiff from the Equal Employment Opportunity Commission, the Rhode Island Commission for Human Rights, or any other government entity, agency or court in connection with his employment with Defendants.

RESPONSE 3: Please see Attached.

REQUEST 4: Any and all documents that relate to any physical or psychological illness, infirmity, injury or impairment of Plaintiff from January 1, 2000 to the present including, but not limited to, physician hospital or pharmaceutical records and bills.

RESPONSE 4: None to date.

REQUEST 5: Any and all documents that relate to visits Plaintiff made to any physician, psychiatrist, social worker or other health care professional from January 1, 2000 to the present.

RESPONSE 5: None to date.

REQUEST 6: All written statements, tape recorded statements and other documentation provided to Plaintiff or his agents by any person contacted or interviewed in connection with the subject matter of this action.

RESPONSE 6: None to date.

REQUEST 7: Any and all sound recordings, minutes, notations or documentation of any kind regarding or referring to any conversations between employees or former employees of Defendants from January 1, 2000 to the present.

RESPONSE 7: None to date.

REQUEST 8: Any and all documents that support or relate in any way to Plaintiff's claims that he has been discriminated against because of his origin.

RESPONSE 8: Any responsive documents currently in Plaintiff's possession, custody or control are attached.

REQUEST 9: Each and every document Plaintiff intends to introduce as an exhibit at the trial of this matter.

RESPONSE 9: Plaintiff is in the process of confirming a list of potential exhibits, pending the close of discovery. Any other documents in Plaintiff's current custody are attached.

REQUEST 10: All documents stating or setting forth Plaintiff's calculation of his damages including, but not limited to, all documents which describe or set for the method(s), factor(s) and assumption(s) used by Plaintiff or his representatives in calculating the damages sought in this litigation.

RESPONSE 10: Attached are payroll checks, stubs substantiating wage history.

REQUEST 11: Any and all documents identified in response to Defendants' interrogatories to Plaintiff.

RESPONSE 11: Any and all documents are attached.

REQUEST 12: Any and all documents related to Plaintiff's application for unemployment benefits from January 1, 2000 to the present.

RESPONSE 12: None.

REQUEST 13: Any and all documents regarding or referring to Plaintiff's efforts to secure employment since his layoff from Defendants, including but not limited to, copies of all employment applications, resumes or letters submitted by him and any responses thereto.

RESPONSE 13: None.

REQUEST 14: Any and all documents regarding or referring to any employment offered or secured by Plaintiff since his lay off from employment with

Defendants, including, but not limited to, copies of all correspondence and offers, employment applications, and any and all employment contracts.

RESPONSE 14: None.

REQUEST 15: Plaintiff's federal and state income tax returns (including W-2's and 1099's) for the years 1999, 2000, 2001, 2002, 2003 and 2004.

RESPONSE 15: Plaintiff, as a native of Puerto Rico, and residing therein, believes he was not obligated to file tax returns, as a self-employed person, through the year 2002. It is Plaintiff's position that he was advised by his accountant that he had insufficient income to warrant the filing of a return for 2003. He has not filed a return for the year 2004.

REQUEST 16: All written statements and other documentation which Plaintiff has in his possession stating or concerning any and all admissions or statements against him made by a party to this action or any employee, officer, agent or representative of a party to his action.

RESPONSE 16: None.

REQUEST 17: Any and all documents or correspondence of any kind which have not been previously requested which relate in any way to any of the allegations in Plaintiff's Complaint or the acts allegedly committed by Defendants of which Plaintiff complains.

RESPONSE 17: None.

Respectfully Submitted,
Jose Ofrey
By His Attorney,

Stephen T. Fanning #3900
305 South Main Street
Providence, RI 02903
401-272-8250
fax: 401-272-4520

CERTIFICATION

I hereby certify that I hand delivered a copy of the within to Joseph Whelan, 1500 Fleet Center, Providence, RI 02903, on the date indicated below.

Date: 11/10/05